<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FARRAKHAN WILLIAMS | No. 23cr690 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN**, **District Judge.**

Defendant Farrakhan Williams, accused of violating 18 U.S.C. § 922(g)(1),[1] the "felon-in-possession" statute, moves to dismiss the indictment. Williams argues that the statute is facially unconstitutional, and unconstitutional as applied to him. D.E. 26 ("Mot.").[2] The Government opposes. D.E. 37 ("Opp'n"). Williams replies. D.E. 43 ("Reply"). For the reasons below, the Court will **DENY** the motion.[3]

**I.     BACKGROUND**

During the weeks of June 11, 2023, and June 18, 2023, law enforcement utilized a confidential source to conduct controlled buys of cocaine from Williams. Opp'n. at 2. Williams accessed his Danforth Avenue home (the "Home") during the buys, and law enforcement confirmed that Williams lived at the Home and that his New Jersey driver's license and vehicle registration also listed the Home. *Id.* Accordingly, law enforcement obtained search warrants for Williams and the Home. *Id.*

---

[1] New Jersey does not classify crimes as felonies or misdemeanors. Like the parties, the Court defines "felony" as "a crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1), excluding any state crime classified as a state misdemeanor and punishable by a term of imprisonment of two years or less," 18 U.S.C. § 921(a)(20)(B).
[2] Williams supplemented the original motion with two others, which reiterate and expand upon the original motion's arguments. *See* D.E.s 33, 36.
[3] The Court decides this motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b).

On or about June 26, 2023, at approximately 5:00 a.m., law enforcement arrived at the Home to execute the warrants. *Id.* Williams exited the home, where he was detained. *Id.* While detained, Williams informed law enforcement that there was a firearm in the Home, and provided its location. *Id.* A search of the Home revealed marijuana; paraphernalia and packing materials; more than $4,500 in currency; four cell phones; a Smith & Wesson M&P Shield M 2.0 9mm handgun bearing serial number LFD6853, loaded with eight 9mm ammunition rounds; 146 .32 caliber rounds; and 98 .22 rounds. *Id.* at 1-2.

Based on numerous prior felony convictions, Williams was indicted for knowing possession of a firearm and ammunition by a felon. 18 U.S.C. § 922(g)(1). D.E. 8 (the "Indictment").[4] Those prior felony convictions are as follows:

1. When he was 19 years old, he was arrested on February 17, 1998, convicted, and later sentenced on April 16, 1999 to four years' probation for controlled dangerous substance ("CDS") distribution on or near school property, N.J.S.A. 2C:35-7. Opp'n at 3.

2. Eight months into that probationary term, Williams was indicted on October 6, 2000 and, after pleading guilty, sentenced on May 31, 2002 to five years' imprisonment for burglary, N.J.S.A. 2C:18-2. *Id.* at 3-4.

3. On October 11, 2001, while he was on probation from his first conviction and pretrial release for his second, Williams was arrested and, after pleading guilty, sentenced on May 31, 2002, to four years' imprisonment for escape from detention, N.J.S.A. 2C:29-5A. *Id.* at 4.

---

[4] The Indictment supersedes an earlier Complaint with the same allegation. D.E. 1.

4. Following his release, on August 11, 2005, Williams was arrested and indicted for endangering the welfare of a child, N.J.S.A. 2C:24-4A. After pleading guilty, he was sentenced on March 24, 2006, to five years' imprisonment. *Id.*

5. On July 1, 2016, Williams was arrested and charged with drug offenses. After pleading guilty, he was sentenced on March 10, 2017 to three years' probation for CDS possession, N.J.S.A. 2C:35-10A(1). *Id.* at 5.

6. Weeks later, on April 3, 2017, Williams was arrested and charged with drug distribution and possession. Following a guilty plea, he was sentenced on August 11, 2017 to one year of probation for CDS possession, N.J.S.A. 2C:35-10A(1). *Id.*

7. Finally, again while on probation, Williams was arrested on April 17, 2018 for drug distribution and drug possession offenses. *Id.* On September 12, 2019, Williams was sentenced to another year of probation for manufacturing and distributing CDS, N.J.S.A. 2C:35-5A(1). *Id.*

Williams does not contest the existence of those convictions, or even the firearms allegations here.[5] Rather, in various filings and in-person appearances,[6] Williams has argued that the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2127

---

[5] Williams does challenge the Government's allegation that he owned the gun. He argues that the gun, found in a dresser drawer in the Residence, did not belong to him. D.E. 43-1 at 1. He also challenges the allegation that drugs were found in the Residence. "In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990).

[6] As the Government notes, during a December 29, 2023, status conference, this Court "encouraged Williams to allow his appointed counsel to assist in supplementing his motion and expressed concern that he had failed to address the necessary legal standards." Williams has apparently not heeded that encouragement, instead continuing to submit numerous pro se filings and declining to collaborate with his assigned counsel. Though that is, of course, his right, and though Williams presents cogent arguments, this Court continues to emphasize that he would be best served by permitting the assistance of his capable counsel.

(2022), the Third Circuit's en banc decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023), and various subsequent district court opinions throughout the country, including in this Circuit, mandate a finding that § 922(g)(1) is unconstitutional on its face, and as applied to Williams. Specifically, Williams argues that § 922(g)(1) violates the constitution by imposing an effective lifetime ban on him, and others similarly situated, based only on their felon status, *i.e.*, that they were convicted of crimes punishable by a year or more in prison.

II.   ANALYSIS

### A. Second Amendment Jurisprudence Before and After *Bruen*

The Second Amendment provides that a "well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Until recently, many courts, including the Third Circuit, required a two-step means-end analysis in Second Amendment cases. First, courts would ask whether "the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). If so, courts would "evaluate the law under some form of means-end scrutiny. If the law passe[d] muster under that standard, it [was] constitutional." *Id.*

In *Bruen*, the Supreme Court eliminated any means-end analysis and clarified the framework that courts should follow. 142 S. Ct. at 2127. Now, "[t]o justify its regulation, . . . the [G]overnment must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U. S. 36, 50 n.10 (1961)). Section 922(g)(1) clearly regulates possession of a firearm—it is

effectively a lifetime ban on firearm and ammunition possession for felons. Thus, the Court must apply *Bruen*'s framework.

*Bruen* mandates two steps.[7] First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2129-30. And second, if the Second Amendment covers the conduct, the "presumption" that the conduct is constitutionally protected can be rebutted only if the Government is able to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

Many defendants have argued that *Bruen* or *Range* rendered § 922(g)(1) presumptively unconstitutional. Not so—§ 922(g)(1); *District of Columbia v. Heller*, 554 U.S. 570, 583-84 (2008); and *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) live on.

Most jurists to address the issue have emphasized that *Bruen* does not disturb any part of *Heller* or *McDonald* pertaining to restrictions that may be imposed on the possession or carrying of guns, including such restrictions on convicted felons. *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring). For example, Justices Kavanaugh and Roberts reassert that "'[n]othing in [*Bruen*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . .'" *Id.* at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626 and *McDonald*, 561 U.S. at 786). Likewise, Justice Alito emphasized that *Bruen* does not "disturb[] anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns," *id.* at 2157 (Alito, J., concurring), and he reiterated that *Bruen*'s holding is

---

[7] Even courts characterizing *Bruen*'s framework as a "one-step, burden-shifting approach" recognize that the "approach consists of *first* determining whether the Second Amendment's plain text covers [the charged] conduct, and *then* determining whether [the government has] met [its] burden of demonstrating that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 298 (N.D.N.Y. 2022).

limited to the rights of "law-abiding people," *id.* at 2159 (Alito, J., concurring); *see United States v. Canales*, 2023 U.S. Dist. LEXIS 208177, at *3 (E.D. Pa. Nov. 20, 2023) ("[S]ix Justices (Roberts, Alito, Kavanaugh, Breyer, Sotomayor, and Kagan), through concurring and dissenting opinions, [have] signaled their understanding that the majority opinion in *Bruen* did not call into question the constitutionality of the § 922(g)(1).")

It is true, after *Range*, that a Second Amendment challenge to § 922(g)(1)'s constitutionality, as applied to a particular defendant, is "nonfrivolous." *United States v. Perez*, No. 22-55, 2024 U.S. Dist. LEXIS 24805, at *3-4 (D. Del. Feb. 13, 2024). There are, in other words, conceivable scenarios—as in *Range*—in which the Second Amendment could be found unconstitutional as to a particular individual's circumstances and background. But *Range* is considered an "outlier" because he

> had been convicted in 1995 of a non-violent misdemeanor (considered to be a felony for federal purposes due to the maximum sentence being five years imprisonment), served a probationary sentence, paid his financial obligations caused by the conviction, and otherwise lived without contact with the criminal justice system for more than twenty years. He then came to court so that he could purchase a long gun to go hunting or a shotgun for self-defense at home.

*United States v. Cook*, 2023 U.S. Dist. LEXIS 216556, at *2 (D. Del. Dec. 5, 2023).

This distinguishes it from challenges like this one, brought as a motion to dismiss felon-in-possession charges by a defendant with recent criminal convictions evidencing a history of antisocial or dangerous behavior. Indeed, the Third Circuit itself described *Range* as a "narrow" holding. 69 F.4th at 104 n.9. This Court likewise construes *Range* narrowly, *i.e.*, limiting it to the same, or reasonably similar, circumstances of an individual petitioner with a single, decades-old non-violent felony conviction affirmatively requesting to purchase a long gun, shotgun, or other

gun "'in common use' today for self defense." *Bruen*, 142 S. Ct. at 2134 (quoting *Heller*, 554 U.S. at 627).

Most courts have done the same, rejecting post-*Range* "as-applied" challenges to § 922(g)(1) prosecutions. In doing so, "[t]hose courts have found that there is a historical tradition that legislatures have disarmed those individuals thought to be dangerous or a threat to public safety if armed." *Cook*, 2023 U.S. Dist. LEXIS 216556, at *2 (citations omitted). Indeed, the Third Circuit recently rejected, albeit in a non-precedential decision, a Second Amendment challenge to § 922(g)(1). In *United States v. Hall*, No. 23-1430, 2024 U.S. App. LEXIS 3115, at *4 (3d Cir. Feb. 9, 2024), the Circuit considered the defendant's argument that "the Second Amendment bars punishing him for carrying a gun," and held that "[n]othing in [*Range*]," which involved a "single, decades-old conviction of minor welfare fraud," "suggests that it applies to someone with [defendant's] long, serious criminal history." *Id.*

This Court does not, however, rest on the determinations of other courts; it also independently finds that § 922(g)(1) is not facially unconstitutional, or unconstitutional as applied.

### B.  The Second Amendment's Plain Text Covers Williams, But Not His Conduct

Within *Bruen*'s first step—determining whether the Second Amendment's text "covers an individual's conduct"—are two sub-issues: the individual and the conduct. First, the individual: as *Range* made clear, the Second Amendment applies to all Americans, not only to law-abiding citizens. 69 F.4th 96, 103 (3d Cir. 2023). Thus, it applies here as well.

The next question is whether the Second Amendment applies to an individual's *conduct*. Here, the Government argues that Williams bears the burden to demonstrate that he possessed the gun for a constitutionally protected purpose.

There is some support for the Government's theory. For example, in *Range,* the plaintiff sought, in a civil action, an affirmative declaration that he could possess a weapon despite his prior Pennsylvania state conviction for a false statement made to obtain food stamps. 69 F.4th at 98. And the Third Circuit found that whether Range's conduct was covered by the Second Amendment's plain text was an "easy question": "Range's request—to possess a rifle to hunt and a shotgun *to defend himself at home*—tracks the constitutional right as defined by *Heller.*" 69 F.4th at 103 (citing *Heller*, 554 U.S. at 582) (emphasis added). Where an indictment charges a defendant with violating § 922(g)(1) based on conduct falling squarely within the Second Amendment's established rights—armed self-defense, hunting, or serving in the militia, *Range*'s analysis would more clearly control. *See United States v. Jenkins*, No. 23-088, 2023 U.S. Dist. LEXIS 181224, at *26 (E.D. Pa. Oct. 6, 2023).

Here, in a criminal context, the issue is not so "easy." Section 922(g)(1) may require proof of knowledge of felon status, but does not mention any purpose for possessing a firearm or ammunition. This differentiates Second Amendment challenges to § 922(g)(1), which regulates possession based on felon *status*, from challenges to § 924(c)[8] and U.S.S.G. § 2D1.1(b)(1),[9] which regulate possession based on unlawful *purpose*. Courts have consistently rejected Second Amendment challenges to the latter, even after *Bruen*. *See United States v. Cash*, No. 22-2713, 2023 U.S. App. LEXIS 26627, at *6 (3d Cir. Oct. 6, 2023) (collecting post-*Bruen* cases and affirming § 924(c) conviction).

---

[8] Section 924(c)(1)(A) prohibits the use or carrying of firearms "during and in relation to" any crime of violence or drug trafficking crime.
[9] U.S.S.G. § 2D1.1(b)(1) imposes a sentencing enhancement where a defendant commits a drug trafficking crime and a "dangerous weapon (including a firearm) was possessed."

Some post-*Bruen* and *Range* decisions have considered a defendant's purpose as part of the "conduct" involved in a § 922(g)(1) charge. *See, e.g.*, *United States v. Velazquez*, No. 23-657, 2024 U.S. Dist. LEXIS 1690 (Bumb, C.J.), at *35-36 (D.N.J. Jan. 4, 2024) ("[T]his Court gravely doubts the Second Amendment's text protects his conduct—possessing a firearm while allegedly engaging in drug trafficking."). In *Velazquez*, as here, the indictment contained just one charge: knowing possession of a firearm and ammunition by a felon in violation of § 922(g)(1). And because the "credible evidence . . . reveal[ed the defendant] possessed the firearm in connection with an alleged drug deal," his as-applied challenge to § 922(g)(1) failed. *Id.* at *36.

Likewise, in *Jenkins*, as here, the defendant had prior felony convictions and an outstanding warrant, prompting officers to frisk him and discover a weapon, ammo, and drugs. 2023 U.S. Dist. LEXIS 181224, at *2. And there, like here, the indictment omitted the drugs, and charged only knowing possession of a firearm and ammunition by a felon. *Id.* And rounding out the similarities: the defendant moved to dismiss, arguing that § 922(g)(1) is unconstitutional both facially and as applied to him. *Id.* at *1.

The court ultimately held, as relevant here, that whatever *Bruen* and *Range* did change, it did not change prior precedent considering an individual's purpose for firearm possession, and declined to extend the right to bear arms beyond *lawful* purposes like self-defense in the home. *See id.* at *28 (citing *Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016) (noting that *Binderup*'s plurality and concurring opinions, comprising a total 12 of 15 en banc votes, agreed that the right to bear arms was rooted in self-defense)).

Other courts have disagreed with that approach. *Harper*, 2023 U.S. Dist. LEXIS 155822, at *20-21 ("Other than to address a Second Amendment challenge, there is no reason to require a defendant accused of illegal possession of a firearm pursuant to Section 922(g) to state his purpose

9

for possessing the firearm. That is because the circumstances surrounding the possession do not impact the elements of the offense."); *United States v. Bullock*, No. 3:18-CR-165, 2023 U.S. Dist. LEXIS 112397, at *47-48 (S.D. Miss. June 28, 2023) ("*Bruen* step one requires us to look at the 'conduct' being regulated, not the status of the person performing the conduct. . . . [T]he conduct the [G]overnment seeks to punish is Mr. Bullock's (alleged) knowing possession of a firearm in his home. It hasn't charged him with brandishing a weapon, firing one, domestic violence, assault, or battery."). *Harper* highlights a significant concern: analyzing a defendant's purpose for possession could require a defendant to "make a representation about his purpose in possessing a firearm without that representation being deemed an admission." 2023 U.S. Dist. LEXIS 155822, at *21.

The Court agrees that there is no reason to explore, through a hearing or any other means, the purpose for the conduct—possession of a handgun in the home—because it is plainly protected. However, as discussed further below, the second aspect of *Bruen*'s framework merits denial of the motion.

### C. Section 922(g)(1), As Applied, is Constitutional Because This Nation Has a Historical Tradition of Disarming Those Deemed Dangerous

Where the Second Amendment has been found to apply, the Government "bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Range*, 69 F.4th at 101 (quoting *Bruen*, 142 S. Ct. at 2127).[10] Here, the Government has met its burden to show that § 922(g)(1) is

---

[10] This has been criticized as, among other things, a "historical Where's Waldo." *United States v. Love*, 647 F. Supp. 3d 664, 670, at *1 (N.D. Ind. 2022); *see also Bullock*, 2023 U.S. Dist. LEXIS 112397, at *3-4 (quoting Gordon S. Wood, *The Supreme Court and the Uses of History*, 39 Ohio N.U. L. Rev. 435, 446 (2013)) ("Yet it appears that the Court continues to engage in 'law office history'—that is, history selected to 'fit the needs of people looking for ammunition in their causes'—in Constitutional interpretation.").

consistent with "this Nation's historical tradition of firearm regulation" and does not violate the Second Amendment because disarming people posing a danger to society is deeply rooted in our country's legal traditions.

"This Nation has a historical tradition of disarming dangerous individuals and those who would endanger the public's safety if allowed a firearm." *Velazquez*, 2024 U.S. Dist. LEXIS 1690, at *37-38 (citing *Koons v. Platkin*, No. 22-7464, 2023 U.S. Dist. LEXIS 85235, at *74 (D.N.J. May 16, 2023); *accord Range*, 69 F.4th at 111-12 (Ambro, J. concurring, joined by Greenaway, Jr., J., and Montgomery-Reeves, J.) (explaining Founding era disarmament laws "were measures driven by the fear of those who, the political majority believed, would threaten the orderly functioning of society if they were armed," and "[c]ertain regulations contemporaneous with the Fourteenth Amendment's ratification reaffirm the familiar desire to keep arms from those perceived to threaten the orderly functioning of society"); *see also United States v. Smith*, No. 2:23-cr-00008, 2023 U.S. Dist. LEXIS 184606, at *11 (W.D. Pa. Oct. 13, 2023) ("While . . . there is no historical tradition from the colonial era or early Republic categorically disarming those merely convicted of crimes ([particularly those like *Range*]), there is a long history of disarming people who pose a danger to society.").

Courts in the Third Circuit have, even after *Range*, found almost uniformly that bans on possession of firearms by a person previously convicted of crimes is constitutional.[11] This includes a variety of predicate convictions for a defendant's § 922(g)(1) charge imputing some level of

---

[11] *United States v. Stone*, No. 22-445, 2023 U.S. Dist. LEXIS 227209, at *3 (E.D. Pa. Dec. 21, 2023) (collecting E.D. Pa cases); *United States v. Bost*, No. 2:21-cr-30, 2023 U.S. Dist. LEXIS 201002, at *3, 5 (W.D. Pa. Nov. 8, 2023) (collecting W.D. Pa and M.D. Pa cases); *United States v. Hawkes*, No. 22-111, 2023 U.S. Dist. LEXIS 215869 (D. Del. Dec. 4, 2023).

dangerousness or other basis for distrust.[12] These cases are consistent with the Third Circuit's caution that *Range*'s holding was a "narrow one" limited to the particular, distinguishable facts present in that case: a civil petition for possession of a weapon in the home by someone who had completed their sentence for a non-"dangerous" felony. 69 F.4th at 106.

This Court need not retread ground well-worn by the many other thorough opinions addressing the issue. The Court is persuaded, however, by the Government's myriad authorities highlighting Second Amendment precursors that disarmed those deemed "dangerous" or "distrusted." Opp'n at 14-24. Considering the overwhelming body of historical analogues, precedent, and persuasive authority, the Court finds that § 922(g)(1), as applied, is constitutional based on the predicate convictions, at least one of which is for drug trafficking.

It is true that some courts within this Circuit have dismissed § 922(g)(1) charges after finding that the Government failed to meet its burden to show a historical tradition of disarming felons. *See United States v. Quailes*, No. 1:21-CR-0176, 2023 U.S. Dist. LEXIS 147657 (M.D. Pa. Aug. 22, 2023) and *Harper*, 2023 U.S. Dist. LEXIS 155822. The same was found in Judge Reeves' thorough *Bullock* decision. 2023 U.S. Dist. LEXIS 112397 at *9. However, this Court is not bound by those cases, and does not find them persuasive.

---

[12] *United States v. Morales*, No. 3:22-CR-161, 2023 U.S. Dist. LEXIS 172135, at *1 n.1 (M.D. Pa. Sep. 26, 2023) (burglary); *United States v. Wise*, No. 21-511, 2023 U.S. Dist. LEXIS 171244, at *11 (W.D. Pa. Sep. 26, 2023) (prior convictions for drugs, unlawful weapons possession, and endangering the welfare of a child); *United States v. Woznichak*, No. 21-242, 2023 U.S. Dist. LEXIS 199512, at *16-17 (W.D. Pa. Nov. 7, 2023) (felony drug trafficking offenses); *Porter v. United States*, Civil Action No. 22-6199, 2023 U.S. Dist. LEXIS 175156, at *18 (D.N.J. Sep. 28, 2023) (same); *United States v. Bost*, No. 2:21-cr-30, 2023 U.S. Dist. LEXIS 201002, at *4 (W.D. Pa. Nov. 8, 2023) (terroristic threats); *United States v. Johnson*, No. 23-cr-77, 2023 U.S. Dist. LEXIS 174896, at *3 (E.D. Pa. Sept. 27, 2023) (carrying a firearm without a license and receiving stolen property); *United States v. Davis*, No. 23-cr-60, 2023 U.S. Dist. LEXIS 185738, at *10 (M.D. Pa. Oct. 16, 2023) (unlawful possession of a sawed-off shotgun and felony larceny); *United States v. Robinson*, No. 22-cr-362, 2023 U.S. Dist. LEXIS 191972, at *6-8 (M.D. Pa. Oct. 25, 2023) (grand theft of a motor vehicle).

Notably, unlike in those cases, the Government has provided ample authority here to affirmatively prove that § 922(g)(1) "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." In contrast, Judge Reeves in *Bullock* observed that the Government had submitted only a "three-and-a-half page response limit[ing] *Bruen* to its facts." 2023 U.S. Dist. LEXIS 112397, at *9; *see also Harper*, 2023 U.S. Dist. LEXIS 155822, at *29-30 ("[T]he Government makes no effort to identify a historical analogue that involves the criminalization of firearm possession for those convicted of drug trafficking offenses (or any kind of drug-related or trafficking-related offense for that matter) or robbery offenses.").

Williams makes several arguments in reply. First, he argues that *Bruen* and *Range* are binding precedent. *See* Reply at 43. While this is an accurate statement, they do not alter the Court's conclusion as to how they are applied here.

Next, Williams argues that the Government improperly relies on historical analogues from English common law, state Constitutional ratifying conventions, and Reconstruction-era laws. *See* Reply at 7-9. But while it is true that "not all history is created equal," *Bruen*, 597 U.S. at 34, because "the right to keep and bear arms was a *pre-existing* right," courts "must consider English history dating from the late 1600s, along with American colonial views leading up to the founding." *Range*, 69 F.4th at 120 (cleaned up); *see also id.* ("Post-ratification practices from the late eighteenth and early nineteenth centuries are also highly relevant, while later nineteenth century history is less informative.").

Williams also argues that the Government has misrepresented the role of drugs in this case—according to Williams, no drugs were found. *Id.* at 5, 9. However, whether or not drugs were found in the Home is irrelevant to the central issue: whether there is a historical analogue for disarming those deemed dangerous based on *prior* conduct, including those with felony

13

convictions. And as discussed above, there are such analogues justifying disarmament of individuals like Williams with prior felony convictions for burglary and drug-related offenses.

Accordingly, this Court will **DENY** the as-applied Second Amendment challenge.

### D. Because § 922(g)(1), as Applied, is Constitutional, Any Facial Challenge Also Fails

A facial challenge is "the most difficult challenge to mount successfully" because "the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Because there is no demonstration that § 922(g)(1) is unconstitutional as applied, the facial challenge must fail. *United States v. Mitchell*, 652 F.3d 387, 415 (3d Cir. 2011) ("Because the statute is constitutional as applied to defendant, he has not shown that there is no set of circumstances under which the statute may be applied constitutionally.") (cleaned up); *see also Velazquez*, 2024 U.S. Dist. LEXIS 1690, at *40-41.

Williams argues that "there is no set of circumstances that exist[s]" which could ever save § 922(g)(1)'s constitutionality. Reply at 13. "There is no law," Williams argues, that "should be able to strip, ban, and deny any woman or man of their constitutional rights for the rest of their lives." *Id.* (cleaned up). Upholding the statute, Williams argues, could result in permanent disarmament of an individual who, for example, served a year in prison for mere vandalism. *Id.*

Suppose the Court accepted the unlikely hypothetical of an individual charged with violating § 922(g)(1) based solely on a predicate conviction for vandalism, and the even-more-remote possibility that a judge imposed a year-long (or more) sentence for vandalism. The Government nevertheless presents a more persuasive counterpoint at the opposite end of the spectrum as Williams' hypothetical: that § 922(g)(1)'s effective lifetime disarmament would likely be upheld as to the most violent felons: for example, those convicted of first-degree murder later

released from prison. Opp'n at 25-26. And because of *that* possibility, this Court cannot hold that § 922(g)(1) is facially unconstitutional.

### III.   CONCLUSION AND ORDER

No precedential opinion, including *Bruen* and *Range*, has held that § 922(g)(1) is unconstitutional, and there is no cause, on this record, to hold otherwise. Accordingly, it is

**ORDERED** that the motion to dismiss, D.E.s 26, 33, and 36, is **DENIED**; and it is further

**ORDERED** that the Court will address Williams' request to proceed pro se at the March 24, 2024 hearing/conference.

April 12, 2024

*Evelyn Padin*
Evelyn Padin, U.S.D.J.