<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FARRAKHAN WILLIAMS | No. 23cr690 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN**, **District Judge.**

On April 24, 2024,[1] this Court held a status and *Faretta* hearing, permitted Defendant Farrakhan Williams to proceed pro se; relieved defense counsel William Strazza as primary counsel; and appointed Mr. Strazza to a standby counsel role. This order clarifies and supplements the record, and sets additional pre-trial deadlines. To the extent that any portion of this order conflicts with what was stated on the record, this Order controls.

**I.      COUNSEL**

First, for the reasons set forth on the record, Mr. Strazza is relieved as defense counsel, and appointed standby counsel. The Court emphasizes and clarifies Mr. Strazza's extremely limited role as standby counsel. A court "may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta*, 422 U.S. at 834, n.36. That is the narrow role to which the Court has appointed Mr. Strazza.

"A defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure." *McKaskle v. Wiggins*, 465 U.S. 168, 183–84 (1984). "Nor

---

[1] All references to the "record," for the purposes of this Order, reference the April 24, 2024 status conference and *Faretta* hearing.

does the Constitution require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course." *Id.* at 184. As the Court set forth on the record during at least one instance of Defendant's repeated interruptions, a court "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta v. California*, 422 U.S. 806, 834, n.36 (1975). The Court will not hesitate to terminate Defendant's self-representation, and/or—upon proper notice—remove Defendant from the courtroom or impose other sanctions for serious breaches of procedure or decorum. *See Illinois v. Allen*, 397 U.S. 337, 343-44 (1970) (holding that judges may remove disruptive defendants from courtrooms).

This stands in contrast to hybrid representation, which the Court will not permit. One such example occurred in *Wiggins*, where the defendant was permitted to seek the assistance of counsel with respect to "basic [trial] mechanics" such as "informing the court of the whereabouts of witnesses, supplying Wiggins with a form needed to elect to go to the jury at the punishment phase of trial, explaining to Wiggins that he should not argue his case while questioning a witness, and so on." *Wiggins*, 465 U.S. at 184. For example, when "Wiggins attempted to introduce a document into evidence, but failed to mark it for identification or to lay a predicate for its introduction, counsel, at the trial court's suggestion, questioned the witness to lay an appropriate predicate, and Wiggins then resumed his examination." *Id.* "Similarly, the trial judge repeatedly instructed Wiggins to consult with counsel, not with the court, regarding the appropriate procedure for summoning witnesses." *Id.*

However, there is no constitutional right to "hybrid" counsel. *Wiggins*, 465 U.S. at 183–84 (1984). Indeed, "[t]he cases reiterating the principle that courts are not required to allow defendants to split the responsibilities of representation with an attorney are myriad." *United*

2

*States v. Singleton*, 107 F.3d 1091, 1101 (4th Cir. 1997).   Hybrid counsel is "disfavored since it allows a defendant to address the jury, in his capacity as counsel, without being cross-examined, in his capacity as a defendant. *United States v. Oakey*, 853 F.2d 551, 553 (7th Cir. 1988).

Accordingly, Mr. Strazza's role will be limited here to standby counsel, *i.e.*, he shall be entitled to all pre-trial discovery materials, and shall be prepared to take over the defense if necessary, but shall otherwise serve no direct role at trial unless the Court directs.   Additionally, given the issues discussed on the record involving the logistics of Defendant receiving discovery materials in detention, Mr. Strazza may also facilitate communication between the Court, the Government, and Defendant.

## II.   SPEEDY TRIAL

For the reasons below, the Court will toll the Speedy Trial clock through the beginning of trial on July 25, 2024 in the interests of justice.

The Speedy Trial statute provides, as relevant here, that:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C.A. § 3161(c)(1).

But the same statute tolls the Speedy Trial clock in certain situations—for example, for "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion[.]"  18 U.S.C.A. § 3161(h)(1)(D). Thus, the Speedy Trial clock was tolled between August 30, 2023—the day after Defendant's indictment, when he first moved to dismiss and for other relief, D.E. 9—through April 12, 2024,

when the Court denied the motion.  D.E. 50.  Likewise, Plaintiff's motion to relieve counsel and represent himself also tolled the Speedy Trial clock from October 11, 2023, D.E. 13, until the Court ultimately permitted him to proceed pro se on April 24, 2024.[2]

On April 24, 2024, after having been permitted to proceed pro se, Defendant invoked 18 U.S.C. § 3161(c)(2) to request a trial within 30 days.  That provision provides that "[u]nless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se."  *Id.*

Defendant interprets that provision to mandate, upon his April 24, 2024 written demand, a trial within 30 days.  But as the Government argued, and as the Court found on the record, that provision does not provide him that right; rather, it merely sets the (waivable) *minimum* time period for trial preparation so as not to rush a pro se defendant to trial.  *See United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985); *see United States v. Ehmer*, 87 F.4th 1073, 1133 (9th Cir. 2023) ("Section 3161(c)(2) then sets forth a corresponding *minimum* period of preparation that must be afforded to the defendant[.]").  The minimum-timing provision does not "divest[] a district court of its discretion to grant or refuse a continuance, where this discretion is exercised in keeping with the policies underlying specific provisions of the [Speedy Trial] Act."  *Word v. United States*, 616 F. Supp. 695, 697 (S.D.N.Y. 1985), *aff'd*, 795 F.2d 1006 (2d Cir. 1986).

---

[2] According to the Court's calculations, some of the time was not tolled.  The Court initially terminated Defendant's first pro se motion to dismiss.  *See* D.Es 9, 10.  Accordingly, 14 days ran between the termination on September 6, 2023, and the September 20, 2023 order to continue. Until April 24, 2024, at least one motion was pending that required a hearing or further briefing. The Court notes that Defendant filed numerous supplemental motions and briefs.  *See* D.E.s 15, 17, 18, 21-22, 26, 33, 36, 39, 40, 42-45.

Here, more preparation is necessary—the Court has received no pre-trial briefing, memoranda, or other necessary documents. Moreover, it is evident, from the discussions on the record, Defendant needs more time to prepare, including to familiarize himself with courtroom procedures, the Federal Rules of Evidence, and the Federal Rules of Criminal Procedure. "The Speedy Trial Act permits a district court to pause the speedy trial clock during '[a]ny period of delay resulting from [the granting of] a continuance,' but only if the court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the *ends of justice* served by the granting of [a] continuance outweigh the best interests of the public and the defendant in a speedy trial." *United States v. Adams*, 36 F.4th 137, 145 (3d Cir.), *cert. denied*, 143 S. Ct. 238 (2022) (quoting 18 U.S.C. § 3161(h)(7)(A)). "[A] district court may enter a continuance without citing the Act or referencing the ends of justice so long as the court explains a valid factual basis for the continuance on the record and in a manner that shows the court balanced the interests of the public and of all of the defendants." *Id.*

Here, the interests of justice would be served by a final, brief continuance through the July 25, 2024 trial date. Most importantly, the continuance would permit Defendant an opportunity to present the most complete defense. The fact that Defendant is proceeding pro se adds complexity and practical considerations that take time to resolve. Indeed, Defendant himself requested additional discovery[3] and law library[4] time at the April 24, 2024 hearing, suggesting that he has not yet had adequate time to prepare for trial.

---

[3] As discussed on the record, it appears that Defendant's detention has complicated his access to discovery materials.

[4] The Court will order at least four, up to a maximum of eight, hours per day, every day until the pre-trial housekeeping conference on July 23, 2024. To the extent that this access is denied, Defendant may apply to the Court for further relief.

## III.   CONCLUSION AND ORDER

For the reasons above, and for the reasons set forth on the record, it is **ORDERED** as follows:

1. Mr. Strazza is relieved as counsel, and appointed as standby counsel;

2. Mr. Williams shall be entitled to at least four, and up to eight, hours per day of time in his detention facility's law library until July 23, 2024;

3. Time between the date of this Order and trial on July 25, 2024 shall be excluded from the calculation of Speedy Trial days in the interests of justice;

4. The parties shall submit to the Court the following:[5]

    a. By June 10, 2024, all motions in limine;[6]

    b. By June 24, 2024, all motion in limine responses;

    c. By July 1, 2024, all motion in limine replies;

    d. By July 1, 2024:[7]

        i. Proposed jury instructions, including proposed neutral statement of the case;
        ii. Proposed voir dire questions;
        iii. Proposed jury verdict sheet;
        iv. Exhibit lists;
        v. Attorney and witness lists;

---

[5] This is one area in which, in the interests of time, standby counsel's assistance—to the extent that Defendant permits it—will facilitate expedient resolution of any outstanding trial issues.

[6] The motions in limine shall address, but are not limited to, the issue of whether Defendant's in-court statements regarding receipt/possession of the handgun are admissible at trial.

[7] Where practicable, these documents should be submitted jointly and in electronic (Word and PDF form), noting **<u>clearly</u>** where: (1) the parties differ, and the justifications for each party's position; and (2) where the proposed jury instructions differ from the model Third Circuit instructions.

vi.  A list of any other trial issues, excluding the issues addressed in the motions in limine.[8]

5.  A final, in-person pre-trial housekeeping conference will take place on July 23, 2024 at 2:00 p.m., and jury selection will commence July 25, 2024 at 10 a.m.

April 30, 2024

Evelyn Padin, U.S.D.J.

---

[8] For example, this should include trial logistics that consider Defendant's detention and pro se status: how Defendant will question witnesses, argue before the jury, etc.