**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FARRAKHAN WILLIAMS | No. 23cr690 (EP)<br><br>**MEMORANDUM ORDER ON PRE-TRIAL MOTIONS** |

**PADIN, District Judge.**

A federal indictment accuses Defendant, who has chosen to proceed pro se, of a felon-in-possession charge in violation of 18 U.S.C. § 922(g)(1); specifically, that on June 26, 2023, Defendant, knowing that he had previously been convicted of a crime punishable by over a year in prison, knowingly possessed a Smith & Wesson M&P Shield M 2.0 9mm handgun, serial number LFD6853, loaded with eight round of 9mm ammunition. Both parties have filed numerous motions. This Opinion addresses all of the motions without a hearing[1] with the exception of discovery motions which the Court will address separately.

I.    **The Government's Motions in Limine (D.E. 56, "Gov't MIL")[2]**

   A. **Motion to Admit Evidence of Defendant's Drug Trafficking Conduct is Admissible Under Rule 404(b) - <u>Granted</u>**

The Government seeks, pursuant to Federal Rule of Evidence (FRE) 404(b), to admit evidence of Defendant's drug trafficking activity in the weeks prior to the charged conduct, including evidence of Defendant's drug sales at the Danforth Avenue residence and photos

---

[1] There are no material disputes of fact as to the motions discussed below; as to the motion to suppress, all material evidence is available through video footage.
[2] The Government also submitted a final response/letter brief on July 19, 2024. D.E. 72 ("Gov't Supp Br.").

recovered from Defendant's mobile devices that depict drug trafficking activities in his residence and bedroom.

FRE 404(b) governs the admission of "prior bad act" evidence:

(1) **Prohibited Uses**. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) **Permitted Uses**; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

"Because Rule 404(b) is a rule of general exclusion," the party seeking to admit other-acts evidence has "the burden of demonstrating [the evidence's] applicability." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014). "To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010).

> ### 1. *Evidence of the drug investigation has a proper evidentiary purpose and is relevant to the issue of whether Defendant constructively possessed the Gun and Ammo found in the Residence*

First, to demonstrate a proper purpose, the government must "proffer a logical chain of inference consistent with its theory of the case." *United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992). After the government has specified such a purpose, unless the reason that the evidence is proper is plainly obvious, the district court must "articulate reasons why the evidence also goes to show something other than character" by putting this "chain of inferences into the record." *United States v. Daraio*, 445 F.3d 253, 263 (3d Cir. 2006). "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences

from conduct." *Huddleston v. United States*, 485 U.S. 681, 685 (1988). Extrinsic acts can encompass unindicted criminal activity. *See United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019) (affirming admission of evidence regarding unindicted robberies, finding that the government offered such evidence "to prove identity through modus operandi and to show [the defendant's] intent").

When confronted with a Rule 404(b) proffer, "a district court should not merely inquire of the prosecution what it wishes the evidence to prove. Rather, the court should also require the prosecution 'to explain 'exactly *how* the proffered evidence should work in the mind of a juror to establish the fact the government claims to be trying to prove.'" *United States v. Brown*, 765 F.3d 278, 294 (3d Cir. 2014) (quoting *Caldwell*, 760 F.3d at 282 ("How, exactly, do Caldwell's two prior convictions for unlawful firearm possession suggest he knowingly possessed this gun on this occasion?'")).

The government can prove possession of a firearm for purposes of §922(g)(1) in two ways: (1) by showing that the defendant exercised direct physical control over the weapon (actual possession), or (2) by showing that he exercised dominion or control over the area in which the weapon was found (constructive possession). *Caldwell*, 760 F.3d at 278 (3d Cir. 2014). As the Government notes, its burden of proof on the charged felon-in-possession offense requires proof that the Defendant knowingly possessed the Gun found in his bedroom. Gov't MIL at 5; *see also United States v. Caputo*, 808 F.2d 963, 968 (2d Cir. 1987) ("The government may introduce such evidence during its case-in-chief, rather than waiting until the conclusion of the defendant's case, as long as it is apparent that intent will be in dispute. *See United States v. Reed*, 639 F.2d 896, 906-07 (2d Cir. 1981).

3

To establish constructive possession, the Government must present "sufficient evidence to support an inference that the individual 'knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons.'" *U.S. v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993) (quoting *U.S. v. Iafelice*, 978 F.2d 92, 96 (3d Cir. 1992)). "Dominion and control are not established . . . by 'mere proximity to the [contraband], or mere presence . . . where it is located or mere association with the person who does control the [contraband].'" *U.S. v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999) (quoting *U.S. v. Jenkins*, 90 F.3d 814, 818 (3d Cir. 1996)).

However, both direct and circumstantial evidence are acceptable methods of proof of constructive possession, as are inferences from established facts, as long as there is a "logical and convincing" connection between the facts and the conclusion. *U.S. v. Bellinger*, 461 F. Supp. 2d 339, 347 (E.D. Pa. 2006) (quoting *U.S. v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989)); *see Caldwell*, 760 F.3d at 278 (recognizing that the Government can prove constructive possession under § 922(g)(1) "by showing that [the defendant] exercised dominion or control over the area in which the weapon was found"); *United States v. Shaulis*, No. 20-2253, 2022 U.S. App. LEXIS 2503, at *14 (3d Cir. Jan. 26, 2022) (affirming § 922(g)(1) conviction where firearms and ammo were found propped against the wall, on top of furniture, and in an unlocked, open gun safe — all readily accessible to [the defendant]).

According to the Government, "evidence that Williams was distributing controlled substances shortly before the search warrant execution is critical evidence that Williams knowingly possessed the firearm on June 26, 2023." *Id.* Specifically, "[e]vidence of the Defendant's drug trafficking activity—including his sale of drugs out of the . . . Residence and photographs from his mobile device showing drug trafficking activities in his bedroom, among the photographs of the

4

firearm itself in that bedroom—will help to establish that the Defendant knowingly possessed the firearm in furtherance of that drug trafficking activity and that his possession of the firearm was not by mistake." *Id.*

Defendant's own submissions confirm that he does not appear to be challenging that he lived at the Residence; rather, control over the Gun will be at issue.[3] *See* Defendant's Proposed Opening Statement at 2 ("[Defendant] was sharing the apartment with 3 other adults all sharing the bills . . ."). As the Government correctly surmised, Defendant appears to be arguing that he was unaware of the Gun's presence in his bedroom and/or had no control over it. *See id.* at 2-3 (arguing against a finding of "constructive possession of joint occupancy" because police found a "Clean Legally brought small 9mm firearm (that was purchased by a K. Johnson)" in a dresser drawer of a Residence bedroom where Jennifer Porter and Dianna Silencieux were sleeping); *see also* Defendant's Proposed Jury Instructions at 2 (requesting charge for "Constructive Possession of Joint Occupancy"); Defendant's Proposed Exs. 1-3, 7 (documents addressed to Silencieux, Krystelle Davis/David, Miguel Dominguez, and Plaintiff as occupants of the Residence).

### 2. *Any prejudice relating to the introduction of the drug investigation evidence does not substantially outweigh its probative value*

"The Court must evaluate pursuant to Rule 403 whether the evidence is sufficiently probative, such that its probative value is not outweighed by the inherently prejudicial nature of prior bad act evidence." *Caldwell*, 760 F.3d at 277. "[E]vidence can be kept out only if its unfairly prejudicial effect "substantially outweighs" its probative value. *United States v. Cross*, 308 F.3d

---

[3] At various times, despite this Court urging Defendant to speak through (and continue to be represented by) counsel, he has shifted positions in open court between claiming that the Gun belonged to a roommate and, on at least one occasion, stating that he had permission to use it.

308, 323 (3d Cir. 2002) (citing Fed. R. Evid. 403). "[W]hen evidence is highly probative, even a large risk of unfair prejudice may be tolerable." *Id.*

Here, as discussed above, the evidence is highly probative of Defendant's dominion (or not) over certain areas of the Residence, including where the Gun was found.  As to prejudice, Defendant himself intends to introduce the existence of the drug investigation, though ostensibly to highlight to the jury the fact that the investigation did not reveal any drugs (other than marijuana) in the Residence, and certainly not the cocaine that officers believed to be there (and represented in a warrant application might be there).  Accordingly, the Court will not exclude evidence of the drug investigation.

### 3. *Though Defendant has not explicitly requested one, the Court will issue a limiting instruction*

The Court intends to issue the following limiting instruction to the jury after evidence is elicited regarding the drug investigation, and as part of closing instructions.

> You have heard evidence regarding Mr. Williams' alleged drug distribution activity at or around the time of his arrest.  I am instructing you to bear in mind that Mr. Williams has not been convicted of, or even charged with, that conduct in this case. Thus, you may not consider that evidence in determining whether Mr. Williams is guilty of the pending charge.  You may *__only__* consider the evidence for a very limited purpose: whether Mr. Williams knowingly possessed the firearm and ammunition that he is charged with possessing.

### B. Government's Motion to Impeach Defendant With Prior Convictions If Defendant Chooses to Testify - <u>Granted</u>

Defendant has not indicated whether he intends to exercise his right to testify.  But if he does, the Government seeks to admit, for impeachment purposes, sanitized evidence of three felony convictions sustained by Defendant between 2017 and 2019.  Gov't MIL at 7.

Federal Rule of Evidence 609(a)(1)(B) provides that when a witness was convicted of a crime punishable by more than one year in the convicting jurisdiction, the criminal conviction

"must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." The Government seeks to introduce sanitized evidence of: (1) Defendant's March 10, 2017 conviction for possession of a controlled dangerous substance, a third-degree felony, in violation of N.J.S.A. 2C:35-10(A)(1); (2) his August 11, 2017 conviction for possession of a controlled dangerous substance, a third-degree felony, in violation of N.J.S.A. 2C:35-10(a)(1); and (3) his September 12, 2019 conviction for manufacturing and distributing a controlled dangerous substance, a third-degree felony, in violation of N.J.S.A. 2C:35-5A(1). *Id.* at 7-8. As the Government argues, each is punishable by over a year, and each is less than ten years old. Accordingly, they are admissible so long as their probative value outweigh their prejudicial effect.

Courts utilize four factors to make that determination: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the [defendant's] testimony to the case; [and] (4) the importance of the credibility of the defendant." *Caldwell*, 760 F.3d at 286.

The first factor weighs in favor of admission. Because a defendant who chooses to testify at his trial "places his credibility directly at issue," drug convictions are admissible even "where the defendant is charged with a drug offense." *United States v. Murphy*, 172 F. App'x 461, 462-63 (3d Cir. 2006) (cleaned up).

The second factor likewise weighs in favor of admission. The probative value even of an older conviction "may remain undiminished if the defendant . . . has multiple intervening convictions, both of which could suggest his character has not improved." Here, though two of the convictions were in 2017, Defendant—after receiving probation for the 2017 convictions—was convicted again in 2019 of another drug offense punishable by over a year in prison.

The third factor, the importance of Defendant's testimony to his case, likewise weighs in favor of admission. "The tactical need for the accused to testify on his or her own behalf may militate against use of impeaching convictions. If it is apparent to the trial court that the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying." *Caldwell*, 760 F.3d at 287 (citing Glenn Weissenberger & James J. Duane, *Weissenberger's Federal Evidence* § 609.2 (4th ed. 2001)). "If, on the other hand, the defense can establish the subject matter of the defendant's testimony by other means, the defendant's testimony is less necessary, so a prior conviction is more likely to be admitted." *Id.* at 288.

This factor counsels against permitting the prior convictions as impeachment evidence. True, Defendant himself appears to believe that sufficient evidence already exists for a jury to find that Defendant could not exercise constructive possession over the Gun. For example, Defendant attaches as proposed exhibits numerous documents listing other people as living in the Residence: utility bills, a letter from the Social Security Administration, a Notice to Quit, and an eviction complaint. Moreover, Defendant—who is acting as counsel—will have an opportunity to cross-examine the Government's witnesses to impeach their credibility.

However, this is a "he said, they said" battle between Defendant's version of events and the Government's. *Id.* Accordingly, permitting impeachment based on the prior convictions risks disincentivizing Defendant from exercising the right to testify in his own defense. However, Defendant—as evidenced by his choice to proceed without counsel—has clearly not been dissuaded from speaking in his own defense. Moreover, this is not a case, like *Caldwell*, where this factor is the only one in the Government's favor. *See id.* ("[T]his single factor is not enough to warrant admission of the prior convictions where all others favor exclusion.").

But the nature of the case makes the final factor, the significance of the defendant's credibility, a double-edged sword. "When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction." *Weinstein's Federal Evidence* § 609.05[3][f]; *see United States v. Johnson*, 302 F.3d 139, 153 (3d Cir. 2002) (affirming admission of prior conviction under Rule 609(a) because the defendant's credibility was important). Conversely, the probative value of a defendant's prior conviction may be diminished "where the witness testifies as to inconsequential matters or facts that are conclusively shown by other credible evidence." Wright & Gold, *Federal Practice and Procedure* § 6134, at 258.

Accordingly, should Defendant choose to testify, the prior convictions may be used for impeachment purposes.

### C. Government's Motions in Limine to Preclude Improper Argumentation, Jury Charges, and Jury Nullification – <u>Granted in Part</u>

#### 1. *Jury nullification*

The Government moves to preclude Defendant from arguing for, or otherwise presenting evidence or pursuing lines of inquiry designed to elicit, jury nullification. Gov't MIL at 11. This is evidently a justified concern, as Defendant's proposed voir dire questions include whether jurors "know that [they] are above the Law? That [they] are not constrained to the law or facts…that [they] have the right [to] judge the justice of the law?" and whether jurors "know that [they] have the right to ACQUIT and NULLIFY any law that [they] feel is unjust? Morally wrong? Or not serving the people?" Def. Proposed Jury Instructions at ¶¶ 10-11.

The Court will preclude from making any nullification argument, or any similar argument excusing alleged violations of federal law based on state law or general "policy arguments about what the law ought to be." *United States v. $114,700.00 in United States Currency*, 2019 U.S. Dist. LEXIS 199932, at *8-9 (D. Colo. Nov. 19, 2021) ("It is the role of the Court to instruct the

jury as to the law. The Parties may not employ strategies that are intended to either usurp that role or encourage the jury to violate its oath to follow this Court's instructions."). "Jury nullification 'violates [a juror's] sworn oath and prevents the jury from fulfilling [its] constitutional role.'" *United States v. Smukler*, 2018 U.S. Dist. LEXIS 185119, at *6-7 (E.D. Pa. Oct. 26, 2018) (citing *United States v. Boone*, 458 F.3d 321 (3d Cir. 2006) and *United States v. Kemp*, 500 F.3d 257, 304 (3d Cir. 2007)); *see United States v. Wise*, 581 F. Supp. 3d 656, 660-661 (D.N.J. Jan. 25, 2022) ("jury nullification is not permitted").

### 2. *Sentencing Exposure*

The Government asks the Court to bar Defendant from referencing potential punishment, including potential incarceration. "In the federal courts, the role of the jury in a non-capital case is to determine whether the defendant is guilty or not guilty based on the evidence and the applicable rules of law. The jury is supposed to perform this role without being influenced in any way by what the consequences of its verdict might be." *United States v. Fisher*, 10 F.3d 115, 121 (3d Cir. 1993). "When a jury has no sentencing function, it should be admonished to "reach its verdict without regard to what sentence might be imposed." *Shannon v. United States*, 512 U.S. 573, 579 (1994). Accordingly, the Government's request is granted and Defendant will be preclude from discussing any potential punishment.

### 3. *Improper legal argumentation*

The Government also asks the Court to limit legal arguments made to the jury which misstate the law. For the reasons below, those requests are **granted** in part and **denied** in part.[4]

---

[4] One of those argument is an advice-of-counsel defense, addressed in detail in a different section below.

One such argument is any attempt to relitigate the Second Amendment arguments already denied by the Court. Those will be excluded.

Another argument relates to Defendant's intention to "fully explain the Charged offense 922(g) . . . and the differences between Sole occupancy and Joint occupancy and how a nexus must be formed when it concerns Joint occupancy." The Government argues that Defendant's arguments are unsupported.

The Court agrees that Defendant's position is unsupported. In any event, however, the Third Circuit Model Jury instructions already provide an instruction, which the Court will provide to the jury, regarding the definition of possession:[5]

> To establish the *(second)* element of the offense, the government must prove that **Mr. Williams** possessed the firearm in question. To "possess" means to have something within a person's control. The government does not have to prove that **Mr. Williams** physically held the firearm, that is, had actual possession of it. As long as the firearm was within **Mr. Williams**' control, *he* possessed it. If you find that **Mr. Williams** either had actual possession of the firearm or had the power and intention to exercise control over it, even though it was not in **Mr. Williams**' physical possession - that is, that **Mr. Williams** had the ability to take actual possession of the object when **Mr. Williams** wanted to do so - you may find that the government has proven possession. Possession may be momentary or fleeting.
> . . .
> Proof of ownership of the firearm is not required.

The Government also adds the following language from the model charge, which the Court intends to adopt based on existing arguments and proposed evidence reviewed thusfar (but pending, of course, the evidence adduced at trial):

> The law also recognizes that possession may be sole or joint. If one person alone possesses a firearm, that is sole possession. However, more than one person may have the power and intention to exercise control over a firearm. This is called joint possession. If you find that **Mr. Williams** had such power and intention, then *he* possessed the firearm even if *he* possessed it jointly with another.

---

[5] Third Circuit Model Criminal Jury Charge § 6.18.922G-4 (changes emphasized).

But the Government omits the following optional instruction. The Court intends to include it (again, subject to evidence adduced at trial).

> Mere proximity to the firearm or mere presence on the property where it is located or mere association with the person who does control the firearm or the property, is insufficient to support a finding of possession.

### 4. Cross-examination regarding investigation

The Government also initially challenges Defendant's intent to call into question the Government's investigation, specifically "[a]llowing [Defendant] to suggest, for instance, that law enforcement somehow lacked authority to search the . . . Residence, overstepped constitutional bounds, had insufficient evidence of [Defendant's] drug distribution activities to support the issuance of a search warrant for the . . . Residence, or somehow tricked the state court judge into issuing the search warrant." Gov't MIL at 14. Later, the Government appears to concede this argument, stating that, "to the extent [Defendant] has issues with the statement in the search warrant affidavit that he was the 'sole occupant' of the apartment, he is of course free to cross examine the affiant on this point. But nothing more." Gov't Supp. Br. at 3 n.1.

To the extent that the Government maintains its argument, the argument is denied. As an initial matter, those issues have not yet been litigated, perhaps in part because Defendant has insisted on representing himself and has not had the robust assistance of counsel with motion practice. However, the investigation may have a direct bearing on credibility issues. *See United States v. Millegan*, No. 3:19-cr-00528, 2022 U.S. Dist. LEXIS 95496, at *4 (D. Or. May 27, 2022) (permitting cross-examination of IRS Special Agent on alleged misstatements contained in a search warrant application pertaining to credibility and bias, subject to caution against "any cross-examination that is harassing or that results in a mini-*Franks* hearing."); *United States v. Grant*, No. 3:21-CR-44, 2022 U.S. Dist. LEXIS 154940, at *14-15 (W.D. Ky. Aug. 29, 2022) (permitting

cross-examination of Special Agent "about any prior statements made under oath in the warrant affidavit" and impeachment "with any prior inconsistent statements in the warrant affidavit"); *Hough v. United States*, No. 3:06-CR-39, 2017 U.S. Dist. LEXIS 230466, at *39 (W.D. Ky. Jan. 10, 2017) (noting that counsel "made the objectively reasonable decision not to seek a *Franks* hearing [and] cross-examined [the witness] rigorously, leading to the testimony to which Hough points as evidence that the information in the search warrant affidavit was inaccurate, and leaving to the jury the question of [the witness's] credibility"). The Court will therefore permit cross-examination of any investigators pertaining to bias or credibility.

### 5. *Defendant's proposed voir dire questions and jury charges*

The Government argues that Defendant's proposed jury charges and voir dire questions largely, if not entirely, inappropriate. Gov't Supp. Br. at 8-9. The Court agrees. As to Defendant's proposed jury charges, the Court will utilize the Third Circuit Model Jury Charges, with minimal modifications except where necessary and as the Court will discuss with the parties where appropriate.

As to Defendant's voir dire questions, they largely misstate the law, as discussed in the Court's discussion of jury nullification issues. The Court will permit modified versions of standard questions aimed at determining jurors' backgrounds and potential biases, but will in any event direct its own questioning. The parties will receive a list of the Court's questions—some of which, as Defendant will see, overlap with some that he has included.

### D. The Government's Motion to Preclude Defendant From Arguing or Eliciting Testimony That His Decisions to Plead Guilty in the Past Are Evidence of His Innocence in the Instance Case – <u>Denied without prejudice</u>

The Government argues that Defendant "should be precluded from arguing, introducing evidence, or eliciting testimony from witnesses, that his decisions to enter guilty pleas with respect

to any of these prior convictions are evidence of his innocence in the instant offense." Gov't MIL at 14. The Government argues that "[t]he probative value of the proffered evidence would be substantially outweighed by its potential for unfair prejudice under Fed. R. Evid. 403." The Court defers this determination until Defendant determines whether or not he will testify in his own defense. The Court notes, however, that "[a] conviction under 18 U.S.C. § 922(g)(1) requires the Government to prove three elements: (1) the defendant was previously convicted of a felony, (2) the defendant knowingly possessed a firearm; (3) and the firearm traveled in or affected interstate commerce." *United States v. Huntsberry*, 956 F.3d 270, 279 (5th Cir. 2020). Thus, if a defendant does not "stipulate to the first element to avoid the prejudicial effects of having the specific previous felony introduced into evidence, . . . the Court may admit evidence of the conviction at trial." *United States v. Ward*, 638 F. Supp. 3d 686, 692 (S.D. Miss. 2022).

### E. The Government's Motion to Inform Defendant that Testimony is Only Permitted from the Witness Stand During the Defense Case and Limit Narrative Testimony – <u>Denied Without Prejudice</u>

The Government requests that the Court "reiterate several key tenets of trial presentation, including that: (1) [Defendant] must not make unsworn testimonial statements during his opening statement, closing argument, and the examination of witnesses; and (2) he may testify only from the witness stand." Gov't MIL at 15. The Government also respectfully requests that, should Defendant testify, "he be required to present his testimony in a question-and-answer format, rather than provide a narrative."

The Court denies this request without prejudice. Courts have "broad discretion over the mode and order of examining witnesses and presenting evidence and may allow testimony in narrative form at trial if the Court finds that it would be helpful to the jury." *Chichakli v. Gerlach*, No. CIV-15-687-D, 2018 U.S. Dist. LEXIS 127051, at *7-8 (W.D. Okla. July 30, 2018); Fed. R.

Evid. 611. This includes the discretion to permit pro se litigants to testify in narrative form, but none of these decisions establish that a court is required to permit narrative testimony or vice versa. *See Kaufman LLC v. Est. of Feinberg*, No. 3:13-cv-01259, 2022 U.S. Dist. LEXIS 192988, at *21 (D. Conn. Oct. 24, 2022) (collecting cases); *United States v. Boukamp*, No. 22-11035, 2024 U.S. App. LEXIS 15443, at *70 (5th Cir. June 25, 2024) (holding that trial courts have the "discretion to require [a pro se defendant's] testimony to be in question-and-answer, rather than narrative, form").

At this juncture, and particularly before Defendant has made the determination to testify, it is too early to decide this issue. The Court notes that it has advised Defendant when determining whether he understood the gravity of proceeding *pro se*, a pro se defendant must abide by the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, this Court's local rules, and general courtroom protocol. *See United States v. Peppers*, 302 F.3d 120, 136 (3d Cir. 2002). The Court reminds Defendant that "[t]he right to self-representation, though asserted before trial, can be lost by disruptive behavior during trial, constituting constructive waiver"). *United States v. Dougherty*, 154 U.S. App. D.C. 76, 473 F.2d 1113, 1124 (D.C. Cir. 1972).

Accordingly, the Court advises Defendant that his cross-examination should not devolve into argumentation or testimony. Should Defendant choose to testify, the Court may permit him to testify narratively, subject to reasonable limitations. Defendant should, however, adequately prepare for the possibility that the Court may limit narrative testimony. He should prepare—for himself and standby counsel only—a list of appropriate questions for trial aimed at eliciting information for his defense.

F.     **The Government's Motion to Preclude Defendant Presenting an Advice of Counsel Defense – <u>Granted</u>**

The Government, believing that Defendant's statements made to the arresting officers indicate the potential for an advice of counsel defense, seek to preclude Defendant from asserting the defense. Gov't MIL at 16.

The advice-of-counsel defense is a more specific form of the defense of good faith, available in limited circumstances in which a good faith instruction may otherwise be applicable. *See, e.g.*, *United States v. Greenspan*, 923 F.3d 138, 146 (3d Cir. 2019); *see also* Sand, *Modern Federal Jury Instructions*, ¶ 8-04.   In criminal cases, the "thrust of [the defense] is that the defendant, on the basis of counsel's advice, believed his conduct to be lawful and thus could not be found to have had unlawful intent." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989).

"The elements of an advice-of-counsel defense are: (1) the advice was sought and received before taking the allegedly criminal action; (2) the defendant sought the advice of a professional in good faith; (3) with the purpose of determining whether the conduct was lawful; (4) the professional was apprised of all material facts which the defendant knew; and (5) the defendant acted strictly in accordance with the advice of the professional." *United States v. Hagen*, 542 F. Supp. 3d 515, 518 (N.D. Tex. 2021) (cleaned up).   There is no requirement that the Court wait until close of evidence to determine whether the minimum standard is met.   *United States v. Kaneshiro*, No. 1:22-cr-00048, 2024 U.S. Dist. LEXIS 49613, at *9 (D. Haw. Mar. 19, 2024) (citing *United States v. Kahrig*, No. 21-CR-30022, 2022 U.S. Dist. LEXIS 123133, 2022 WL 2703945, at *1 (S.D. Ill. July 12, 2022) (excluding *in limine* defendants' advice of counsel defense because they failed to provide evidence to meet minimum requirements of each and every element).

Here, there is no clear basis to permit the defense. As an initial matter, there is no indication that Defendant intends to use the defense; indeed, Defendant's opposition indicates that he "never took this defense into consideration until now because this is the first time hearing about this tactic." Opp'n to Gov't MIL at 27. Defendant's pre-trial submissions appear to focus, in addition to nullification or quasi-nullification arguments, on the constructive possession issue. The only mention of any attorney is Defendant's witness list, which lists Defendant's previously-assigned attorney from the Federal Public Defender ("FPD") and an FPD investigator. The FPD's representation, however, post-dated the underlying arrest; accordingly, Defendant could not have relied on the advice of that counsel to possess the Gun.

Additionally, as the Government argues, even if Defendant believed that he was permitted to possess the firearm, "where 'a defendant has the requisite mental state in respect to the elements of the crime but claims to be 'unaware of the existence of a statute proscribing his conduct,' such "ignorance of the law" (or a "mistake of the law") is no excuse." *United States v. Paul*, 826 F. App'x 809, 813 n.2 (11th Cir. 2020) (quoting *Rehaif v. United States*, 588 U.S. 225, 233 (2019)). Thus, Defendant's personal belief—even if based on counsel's advice—about whether he could possess (or his roommate could possess) a firearm despite Defendant's convicted felon status is irrelevant.

Accordingly, the Court will exclude any advice-of-counsel defense or argument, subject to renewal if Defendant discloses the defense and provides sufficient evidence justifying it.

### G.     The Government's Motion to Preclude Defendant From Calling AUSA Grace – <u>Granted with leave for Defendant to renew request</u>

The Government seeks to preclude Defendant from calling as a trial witness AUSA Desiree Grace, who is included on Defendant's witness list. Gov't Supp. Br. at 5. The Government is correct that Defendant's request is procedurally deficient; he has failed to demonstrate compliance

with *Touhy* regulations.   But more importantly, Defendant has not demonstrated that "extraordinary circumstances" exist and there is a "compelling and legitimate" need for AUSA Grace's testimony (or that of any other prosecutor); for example, if no other witnesses were available to provide the testimony sought. *See United States v. Robinson*, No. 3:21-cr-0027-001, 2023 U.S. Dist. LEXIS 191477, at \*12-13 (D.V.I. Oct. 25, 2023) (collecting cases).   Accordingly, the Government's motion is granted, subject to Defendant's renewed application to call AUSA Grace upon demonstration of extraordinary circumstances and compliance with the requisite procedure.

## II.   Defendant's Motions

### A.   Motion to Reconsider the Court's April 12, 2024 Order Denying Defendant's Motion to Dismiss the Indictment ("MTD Order") as Unconstitutional - <u>Denied</u>

Defendant moves to reconsider the Court's order denying his arguments for dismissal based on *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2127 (2022) and *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc), arguing that the Court erred in fact and law. According to Defendant, the factual error involved mischaracterizing Defendant's conduct as possession during drug trafficking.

Whether or not the Court misapprehended any facts, as the Court stated in the MTD order, conduct is only a portion of the *Bruen* analysis.   The more robust portion of the Court's analysis focused on *Bruen*'s primary analysis: whether the Government demonstrated "that the regulation is consistent with this Nation's historical tradition of firearm regulation.   Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"   142 S. Ct. at 2126.

In the MTD Order, this Court noted that "[m]ost jurists to address the issue have emphasized that *Bruen* does not disturb any part of *Heller* or *McDonald* pertaining to restrictions that may be imposed on the possession or carrying of guns, including such restrictions on convicted felons." MTD Order at 5 (citing *District of Columbia v. Heller*, 554 U.S. 570, 583-84 (2008); and then citing *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010)). More recently, since Defendant filed his motion to reconsider, an 8-1 Supreme Court majority positively cited to *Heller* for the proposition that "many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *United States v. Rahimi*, 219 L.Ed.2d 351, 359 (U.S. 2024) (citing *Heller*, 554 U. S., at 626, 627, n. 26). Indeed, following *Rahimi*, the Supreme Court summarily granted certiorari in *Range*, vacated the judgment, and remanded to the Third Circuit for further consideration in light of *Rahimi*. *Garland v. Range*, No. 23-374, 2024 U.S. LEXIS 2917, at *1 (July 2, 2024).

**B.    Defendant's Discovery Motions - <u>Deferred</u>**

Defendant has made numerous requests for additional discovery and to dismiss based on the Government's alleged failure to provide discovery. *See* D.E. 66. According to Defendant, he has not received any response to his discovery requests over the last year in custody, including bodycam footage, his interrogation or the interrogations of individuals who were in the Residence when it was searched (Jennifer Porter and Dianna Silencieux), warrants, informant statements, information pulled from Defendant's phone, lab reports, witness statements and reports, and *Brady*, *Giglio*, and Jencks material. Because there is a dispute of fact as to whether or not the discovery was received, the Court will address this request at a hearing.

A.    **Defendant's Speedy Trial Motions – <u>Denied</u>**

On April 24, 2024, Defendant filed a "motion for a speedy trial," essentially repeating arguments made on the record before then. Defendant filed similar motions thereafter. D.E.s 58, 62, 67. The Court already denied Defendant's Speedy Trial for the reasons stated in its April 30, 2024 Memo Order which also relieved Mr. Strazza as counsel and appointing him as standby counsel. D.E. 52. Defendant's new motions are denied for the same reasons; the Court has already determined that certain time was properly excluded from Speedy Trial calculations—in most cases, based on Defendant's numerous (and in many instances duplicative) filings or to provide additional time for him to review discovery and prepare for trial. *See United States v. Williams*, No. 2017-0014, 2018 U.S. Dist. LEXIS 30369, at *11 (D.V.I. Feb. 26, 2018) ("The filing of Defendant Williams' Discovery Motion and the continuance granted by the Magistrate Judge at his codefendant's request tolled the speedy trial clock.").

Whether or not the case is unusual or complex a "continuance may … be granted in order to provide adequate … preparation." *U.S. v. Fields*, 39 F.3d 439, 444 (3d Cir. 1994); *see United States v. Williams*, 591 Fed. App'x. 78, 85 (3d Cir. 2014) (the need for additional time to prepare for trial was an appropriate reason to grant a continuance that tolled the speedy trial clock). Granting such a continuance gives the defense an opportunity to "decid[e] upon and prepar[e] an appropriate defense." *U.S. v. Lattany*, 982 F.2d 866, 883 (3d Cir. 1992); *see Williams*, 591 Fed. Appx. at 86 (the duration of the continuance granted by the court to allow defendant and his attorney time to prepare for trial was properly excluded from the speedy trial clock);

B.    **Defendant's Motion for Library Time - <u>Granted</u>**

Defendant moved for additional law library time. D.E. 60. The Court granted that motion. D.E. 64.

### C.    Defendant's Motion to Suppress – <u>Granted in Part</u>

Defendant moves to suppress "[a]ll statements and admissions . . . before being advised of the *Miranda* warning." D.E. 59 ("Def. MTS") at 6.[6]  The Government opposes, arguing that Defendant's "statements were spontaneous utterances, and not the result of police questioning." D.E. 63 ("Gov't MTS Opp'n").

The statements that the Government seeks to introduce via testimony and body-worn camera ("bodycam") footage were made in three distinct phases: on the sidewalk during the execution of the search warrant, in a police car for transport to the precinct, and in a different police vehicle for transport to the jail.[7]

The bodycam footage on the sidewalk depicts the following.  At about 5:00 a.m., when officers arrive at the Residence to execute the search warrant, they observe Defendant, place him in handcuffs, inform him of the warrant, and inform him that he is being detained pending the search.  Officers then led Williams away from the front of his apartment building.  As he was being led to a street corner next to his residence, he began shouting, "Jennifer!... Jennifer Porter!!" loudly; according to the Government, Defendant's "open and obvious attempt to alert someone inside the residence to destroy evidence before law enforcement could enter."[8]  Defendant was

---

[6] Defendant also filed a supplemental motion to suppress.  It appears that this filling, and others, experienced mail delays.  D.E. 65.

[7] The Government provided to the Court a USB copy of the footage.  The USB drive contained three videos: a 2-plus hour video titled "Det. Zeno BWC" depicting law enforcement's interactions with Defendant on the street beginning at about 5:00 a.m. and the search of the Residence; an approximately one-hour long video titled "Jail Transport FW" depicting interactions between two officers (in the front seats) transporting Defendant (in the backseat); and a one-hour video titled "Transport FW," which overlapped a portion of the first video but largely depicted Defendant's transport to the local district for detention and processing.  The Court notes that portions of the bodycam footage during the search itself are muted.

[8] Indeed, officers later discovered that there were two women present inside the Residence.

asked to stop shouting and escorted further from the apartment building; officers explained that they did not want to have to place him in a police car.

Once Williams was led to a nearby street corner, he was monitored by two or three officers for approximately 30 minutes while other law enforcement personnel conducted the search of the Residence. The Government acknowledges that Defendant was not provided a *Miranda* warning. Gov't MTS Opp'n at 6.

Defendant asked one of the arresting officers what "this" was "all about." Defendant and the officers engaged in "small talk" about various topics, including the method used to secure Defendant's handcuffs, as well as the officers granting Defendant's requests to adjust the handcuffs, that Defendant was leaving to get coffee when police arrived, and cooking. Defendant asked an officer about the legality of possessing marijuana. Defendant then asked how officers obtained probable cause for the search. The officer responded that he could not comment on an open investigation. The officer then asked, "is it clean in there?" and "is your car clean?" to which Defendant replied, "yes." Defendant then asked an officer if he could retrieve his lawyer's number from his cell phone, to which the officer responded, "not right now... you will later."

After several minutes of small talk and silence, Defendant, unprompted, spontaneously stated, "as far as my wife . . . fiancé's gun in the house, it's legal . . . my lawyer . . . said I can have it in my house with no problem." In response, the officer asked, "is it a handgun or a long gun?" to which Defendant replied, "handgun . . . it's a 9-millimeter, she bought it at a pawn shop, it's legal." Defendant stated that the gun is registered to his fiancée. The officer next asked, "where in the house is it?" to which Defendant replied, "they'll find it."

As two officers continued to wait with Defendant on the street corner, within view of the front of Defendant's residence, Defendant spontaneously told the officers, "I see my gun in a

22

handbag," as he was watching members of the search team exit the Residence.  In response to an officer question, "Oh yea? Was it out in the open?" Defendant replied, "it was in a drawer . . . it was in a dresser drawer."

Approximately 20-30 minutes after Williams was detained pending the execution of the search warrant, Defendant spontaneously told the officers, "You see how organized I got the house... everything got a place? How bad did y'all fuck my shit up? [laughter]."  A moment later, law enforcement led Defendant to a nearby police car to be transported to the police station, during which time he spontaneously told officers that the two women who were present in his residence "were just visiting for the past few days."  While being transported to the police station, Defendant asked officers about his charges, and repeated that his lawyer told him that he was allowed to possess the Gun.

"As a general rule, the initial burden of proof is on the defendant who seeks to suppress evidence."  *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citing *United States v. Acosta*, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992)).  However, once a defendant challenges the admissibility of any statements made while in custody, "the burden shifts to the government."  *Johnson*, 63 F.3d at 245.  Specifically, the Government must prove by a preponderance of the evidence "that the defendant was advised of and understood [his] *Miranda* rights and that he . . . validly waived those rights."  *United States v. Hodge*, No. 2016-0009-03, 2017 U.S. Dist. LEXIS 26116, at *37-39 (D.V.I. Feb. 24, 2017) (alterations in the original) (quoting *United States v. Briscoe*, 69 F. Supp. 2d 738, 741, 41 V.I. 446 (D.V.I. 1999), *aff'd in part, rev'd in part on other grounds*, 234 F.3d 1266 (3d Cir. 2000)).

The Court finds that Defendant was in custody when questioned.  Factors to be considered when determining whether an interrogation takes on custodial dimensions include:

(1) whether the officers told the suspect he was under arrest or free to leave;
(2) the location or physical surroundings of the interrogation;
(3) the length of the interrogation;
(4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and
(5) whether the suspect voluntarily submitted to questioning.

*United States v. Willaman*, 437 F.3d 354, 359-60 (3d Cir. 2006), *cert. denied*, 547 U.S. 1208 (2006).

Here, Defendant—handcuffed on the street for over an hour with multiple officers surrounding him while the Residence was being searched—was plainly not free to leave. Nevertheless, the statements remain admissible under the totality of the circumstances. As an initial matter, the Court agrees with the Government that Defendant's first statement about the gun was a spontaneous admission. At approximately 5:14 a.m., there is a lengthy, approximately one-minute pause in the banter between Defendant and the officers detaining him on the sidewalk. Unprompted, Defendant offers: "as far as my wife . . . fiancée's gun in the house, it's legal . . . my lawyer . . . said I can have it in my house with no problem." This statement was clearly made voluntarily, without intimidation or coercion attendant to a custodial interrogation. *See United States v. Coleman*, No. 10-484 (JBS), 2011 U.S. Dist. LEXIS 71272, at *12-18 (D.N.J. July 1, 2011) (declining to suppress defendant's unprompted statement, made in the back of a police car, that he "should not have left the gun in the open like that" where defendant was "in solitude in the police car with a chance to reflect and clear his mind in assessing his situation" and "had an extensive prior record of convictions and was no novice to the law enforcement system" and the officer "did nothing to prompt him to speak."); *See U.S. v. Goist*, 59 F. App'x. 757, 763 (6th Cir. 2003) (finding that suspect's incriminating custodial statement, made while engaged in small talk with investigating officer, was not product of interrogation); *see also United States v. Tail*, 459 F.3d 854, 858 (8th Cir. 2006) ("Polite conversation is not the functional equivalent of

24

interrogation."); *U.S. v. Satterfield,* 743 F.2d 827, 849 (11th Cir. 1984) ("Incriminating statements made in the course of casual conversation are not products of custodial interrogation."); *United States v. Williams*, 16 Fed. App'x. 90, 92 (4th Cir. 2001) (unpublished) ("[I]t is also well settled that spontaneous or volunteered statements that are not the product of interrogation or its functional equivalent are not barred by *Miranda*, even if the defendant is in custody when the statements are made.")

Nor were the officers' follow-up questions inappropriate, or Defendant's statements suppressible. After Defendant made his unprompted statement, officers knew that a gun was present in the Residence, and—based on Defendant having yelled a woman's name—that someone was likely present there as well. Accordingly, there was a public safety justification for the officers asking further questions about the Gun and its location. *United States v. Johnson*, 95 F. App'x 448, 452 (3d Cir. 2004) (affirming non-suppression of answer to officers' question, "do you have a gun?" based on "public safety" exception because the "question was clearly intended to secure the officers" safety and the safety of the public, and not to obtain evidence useful" in conviction. (citing *New York v. Quarles*, 467 U.S. 649 (1984)); *United States v. Williams*, 181 F.3d 945, 953-54 (8th Cir. 1999) (affirming non-suppression of un-Mirandized statement because "[a]lthough [the defendant's] hands were cuffed behind his back when the officers asked him if they needed to be aware of anything else, the officers could not have known if any armed individuals were present in the apartment or preparing to enter the apartment within a short period of time. Similarly, the officers could not have known whether other hazardous weapons were present in the apartment that could cause them harm if they happened upon them unexpectedly or mishandled them in some way"). Notably, during this interaction, there were no weapons drawn or otherwise hostile or

coercive actions; large portions of the interaction could fairly be described as friendly and good-natured.

This continued even as Defendant was escorted to the back of a nearby police car. As an officer approached, Defendant—again, unprompted—asked "what is this about?" When the officer responded that they have a search warrant, Defendant asked if they found anything other than marijuana and the Gun, and explained that the Gun belonged to his fiancée, who lived in Virginia and left the Gun in the Residence the prior weekend. This is followed by Defendant's self-effacing joke about his weight as he is buckled into the backseat.

To this point, nothing should be suppressed, as it was offered voluntarily and without coercive questioning. By this point, however, Defendant—handcuffed in the back of a police car, on the way to the precinct and later detention, after the Residence has been searched—was clearly detained and should have been provided with a *Miranda* warning. Accordingly, Defendant's statements made before the point at which he is placed in the car and driven to the precinct will be permitted, and all statements thereafter will be suppressed.

## III.    Additional trial logistics

### A.    Shackling

In a July 22, 2024 letter, the Government raises several trial logistics issues. D.E. 73. First, the Government asks the Court to make particularized findings for the record regarding the necessity for shackling. *Id.* Second, the Government raises the question of procedures for removing Defendant "due to obstreperous conduct." *Id.* And third, the Government asks the Court not to sequester its designated case agent. *Id.*

First, the Court has determined that leg shackles are an appropriate measure for trial.

"Shackling is an extreme measure, but in some circumstances it is necessary for the safe, reasonable and orderly progress of trial." *United States v. Brazel*, 102 F.3d 1120, 1156 (11th Cir. 1997) (quoting *United States v. Theriault*, 531 F.2d 281, 284 (5th Cir.) (internal citations omitted), *cert. denied*, 429 U.S. 898 (1976)).  Courts must make individualized assessment of that necessity considering "among other things, the criminal history and background. . . , including whether the defendant has a history of violent acts; the number of defendants being tried together; the nature of the charges pending against the defendants, including whether the charged offenses include violent criminal conduct; any past history of conduct by a defendant that may have disrupted a criminal proceeding; and other circumstances, such as threatening behavior against witnesses or court personnel, that may reasonably bear upon the safety of the courtroom and its occupants or upon the danger of escape. *United States v. Baker*, 432 F.3d 1189, 1244 (11th Cir. 2005).

Based on the potential lengthy sentence if Defendant is convicted, based on Defendant's disruptive conduct at prior hearings, and based on concerns from the United States Marshals Service, the Court has determined that leg shackles are an appropriate security measure in this instance.  The Court notes, however, that it has undertaken measures to significantly reduce the possibility of prejudice.  First, the Court will use cloth to cover counsels' tables, and the witness stand whether or not Defendant chooses to testify in his own defense, to prevent any jurors from observing the leg shackles.[9]  Second, the leg shackles will be muffled, and the Court will ensure that they are inaudible, including when Defendant stands up and sits down.  Second, Government

---

[9] If Defendant does choose to testify, the Court will excuse the jury briefly in order to seat Defendant at the witness stand outside of the jury's presence, and when he concludes his testimony. The Court will follow the same procedure for seating all other witnesses.

counsel will also remain seated at all phases of the trial.[10]  Third, the Court has personally checked the sight lines in the courtroom to ensure that Defendant's shackles are not visible from the jury box.  Though the leg shackles are not readily visible from the gallery, out of an abundance of caution, the Court has closed the first two rows of the gallery to spectators.

**B.    Defendant's Removal from Courtroom**

Also in its July 22, 2024 letter, the Government outlines recommended procedures for removing Defendant from the courtroom.  *Id.*  The Government correctly summarizes the law; however, the Court has no intention, at this time, of removing Defendant from the courtroom.  However, as the Court has previously warned Defendant, disruptions during trial—particularly in the presence of the jury—may lead to his removal from the courtroom.  Though the Court trusts that Defendant will follow proper protocol, should the need arise, the Court will be prepared to follow all proper removal procedures, as outlined in the Judicial Benchbook.  *See Federal Judicial Center*, Benchbook for U.S. District Court Judges, Section 5.01(A) at 145-46 (6th Ed. March 2013) (outlining four considerations: warning before removal, determination of appropriateness of removal, advising defendant of possibility of return, and considering ways to keep defendant apprised of trial progress and facilitating communication with counsel).

**C.    Sequestration of the Government's Case Agent**

The Government's final request in its July 22, 2024 letter is to permit FBI Special Agent Aaron Perkins, the designated case agent for this matter, to remain in the courtroom throughout trial.  Fed. R. Evid. 615(a)(2) provides that "[a]t a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony, [o]r the court

---

[10] The Court will have a phone/intercom system available for sidebar, if necessary.  If, at any point, there is a compelling need for any party to move about the courtroom, second chair for the Government and standby counsel for Defendant may do so.

may do so on its own[, b]ut this rule does not authorize excluding . . . one officer or employee of a party that is not a natural person if that officer or employee has been designated as the party's representative by its attorney." Special Agent Perkins, as the designated case agent, falls within this exception, and therefore may remain in the courtroom throughout trial. *See United States v. Drummond*, 69 F. App'x 580, 581 (3d Cir. 2003) (recognizing "case agent" exception).

## IV.    CONCLUSION AND ORDER

The Court having reviewed the parties' pending motions, and having determined that neither an oral argument nor a hearing are necessary for resolution of all motions except Defendant's discovery-related motions,

**IT IS**, for the reasons and to the extent set forth above, **ORDERED** as follows:

1. Defendant's motions to reconsider the Court's prior orders are **DENIED**.

2. The Court **DEFERS** its determination regarding Defendant's discovery motions.

3. Defendant's speedy trial motions are **DENIED**.

4. Defendant's motion to suppress is **GRANTED in part**, to the extent that all un-Mirandized statements after he is arrested and placed in the car to be transported to the precinct for processing are barred from trial.

5. The Government's motion to permit evidence relating to the drug investigation which led to the discovery of the subject firearm and ammunition is **GRANTED in part**, subject to an appropriate limiting instruction. Cross-examination regarding the investigation, including the subject affidavit(s) and warrant(s), will be permitted.

6. The Government's motion to impeach Defendant with evidence of prior convictions is **GRANTED**.    Should Defendant choose to testify, the Government may impeach

Defendant with evidence relating to the 2017 and 2019 prior drug convictions, subject to an appropriate limiting instruction.

7. The Government's motion to bar jury nullification and other inappropriate arguments is **GRANTED**. Arguments relating to, or suggesting, the possibility of jury nullification, Defendant's sentencing exposure, and legal arguments (including Second and Fourth Amendment arguments) already denied are barred.

8. The Government's motions to preclude Defendant from discussing his decisions to plead guilty in the past and to limit Defendant to question-and-answer testimony conducted by standby counsel are **DENIED without prejudice**.

9. The Government's motion to preclude Defendant from presenting an advice-of-counsel defense is **GRANTED**, subject to renewed argument by Defendant upon the presentation of proper evidence (initially out of the presence of the jury).

10. The Government's motion to preclude Defendant from calling AUSA Grace is **GRANTED**, with leave for Defendant to renew his request.

11. The Government's request to permit Special Agent Perkins to stay in the courtroom throughout trial is **GRANTED**.

12. Defendant's legs will remain shackled throughout trial.

July 23, 2024

Evelyn Padin, U.S.D.J.